PERRY, J.,
dissenting.
I respectfully dissent. I cannot overstate my opposition to the majority’s opinion. In my view, it shatters bedrock constitutional principles and builds on a foundation of flawed “common sense.”

Innocent Possession

The majority pronounces that “common sense and experience” dictate that “a person in possession of a controlled substance should be aware of the nature of the substance as an illegal drug” and further that, “[b]ecause controlled substances are valuable, common sense indicates that they are generally handled with care. As a result, possession without awareness of the illicit nature of the substance is highly unusual.” Majority op. at 421-22.
But common sense to me dictates that the potential for innocent possession is not so “highly unusual” as the majority makes it out to be.
[T]he simple acts of possession and delivery are part of daily life. Each of us engages in actual possession of all that we have on our person and in our hands, and in constructive possession of all that we own, wherever it may be located. Each of us engages in delivery when we hand a colleague a pen, a friend a cup of coffee, a stranger the parcel she just dropped.
State v. Washington, 18 Fla. L. Weekly Supp. 1129, 1138 (Fla. 11th Cir.Ct. Aug. 17, 2011) (footnote omitted), rev’d, _ So.3d _ (Fla. 3d DCA 2012). “[Cjarry-ing luggage on and off of public transportation; carrying bags in and out of stores and buildings; carrying book bags and purses in schools and places of business and work; transporting boxes via commercial transportation — the list extends ad in-finitum.” Shelton v. Sec’y, Dep’t of Corr., 802 F.Supp.2d 1289, 1305 (M.D.Fla.2011).
Given this reality, “[i]t requires little imagination to visualize a situation in which a third party hands [a] controlled substance to an unknowing individual who then can be charged with and subsequently convicted ... without ever being aware of the nature of the substance he was given.” State v. Brown, 389 So.2d 48, 51 (La.1980) (finding that such a situation offends the conscience and concluding that “the ‘unknowing’ possession of a dangerous drug cannot be made criminal”). For example,
[cjonsider the student in whose book bag a classmate hastily stashes his drugs to avoid imminent detection. The bag is then given to another for safekeeping. Caught in the act, the hapless victim is guilty based upon the only two elements of the statute: delivery (actual, constructive, or attempted) and the illicit nature of the substance. See FLA. STAT. §§ 893.02(6), 893.13(l)(a). The victim would be faced with the Hobson’s choice of pleading guilty or going to trial where he is presumed guilty because he is in fact guilty of the two elements. He *432 must then prove his innocence for lack of knowledge against the permissive presumption the statute imposes that he does in fact have guilty knowledge. Such an outcome is not countenanced under applicable constitutional proscriptions.
Shelton, 802 F.Supp.2d at 1308. The trial court order presently under review provides even more examples of innocent possession: a letter carrier who delivers a package containing unprescribed Adderall; a roommate who is unaware that the person who shares his apartment has hidden illegal drugs in the common areas of the home; a mother who carries a prescription pill bottle in her purse, unaware that the pills have been substituted for illegally obtained drugs by her teenage daughter, who placed them in the bottle to avoid detection. State v. Adkins, Nos. 2011 CF 002001, et al., slip op. at 14 (Fla. 12th Cir.Ct. Sept. 14, 2011).
As the examples illustrate, even people who are normally diligent in inspecting and organizing their possessions may find themselves unexpectedly in violation of this law, and without the notice necessary to defend their rights. The illegal drugs subject to the statute include tablets which can also be and are commonly and legally prescribed. A medicine which is legally available, can be difficult for innocent parties to recognize as illegal, even if they think they know the contents. For example, the mother of the teenage daughter carries the pill bottle, taking it at face value as a bottle for the pills it ought to contain, even during the traffic stop at which she consents to [a] search of her belongings, confident in her own innocence. These examples represent incidents of innocence which should be protected by the requirement of [a] mens rea element, particularly given the serious penalties for the crime of drug possession required under Florida law.
Id. at 14-15. Other examples of innocent possession spring easily and immediately to mind: a driver who rents a car in which a past passenger accidentally dropped a baggie of marijuana under the seat; a traveler who mistakenly retrieves from a luggage carousel a bag identical to her own containing Oxycodone; a helpful college student who drives a carload of a friend’s possessions to the friend’s new apartment, unaware that a stash of heroin is tucked within those possessions; an ex-wife who is framed by an ex-husband who planted cocaine in her home in an effort to get the upper hand in a bitter custody dispute. The list is endless.
The majority nevertheless states that there is not “a protected right to be ignorant of the nature of the property in one’s possession,” elaborating that “ ‘[cjommon’ sense tells us that those who traffic in heroin will inevitably become aware that the product they deal in is smuggled, unless they practice a studied ignorance to which they are not entitled.” Majority op. at 421 (quoting Turner v. United States, 396 U.S. 398, 417, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970)). But the above examples, and surely countless others, do not involve such a “studied ignorance.” Rather, they involve genuinely innocent citizens who will be snared in the overly broad net of section 893.13. And therein lies the point:
Section 893.13 does not punish the drug dealer who possesses or delivers controlled substances. It punishes anyone who possesses or delivers controlled substances — however inadvertently, however accidentally, however unintentionally. ... What distinguishes innocent possession and innocent delivery from guilty possession and guilty delivery is not merely what we possess, not merely what we deliver, but what we intend. *433 As to that — as to the state of mind that distinguishes non-culpable from culpable possession or delivery— § 898.13 refuses to make a distinction. The speckled flock and the clean are, for its purposes, all one.
Washington, 18 Fla. L. Weekly Supp. at 1133.

Presumption of Innocence and Burden of Proof

The majority rather cavalierly offers that, “[i]n the unusual circumstance where a person possesses a controlled substance inadvertently, establishing the affirmative defense available under section 893.101 will preclude the conviction of the defendant.” Majority op. at 423. As discussed at length above, I do not agree that innocent possession is such an “unusual circumstance.” Moreover, the majority’s passing reference to simply “establishing the affirmative defense” implies that it is an inconsequential and easy thing to do. The majority further minimizes the enormity of the task, making it seem even friendly, in stating that “[t]he affirmative defense does not ask the defendant to disprove something that the State must prove in order to convict, but instead provides a defendant with an opportunity to explain why his or her admittedly illegal conduct should not be punished.” Id. at 423.
But the affirmative defense at issue is hardly a friendly opportunity; rather, it is an onerous burden that strips defendants — including genuinely innocent defendants — of their constitutional presumption of innocence. “The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.” Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895). It is as ancient as it is profound:
Numerius [was on trial and] contented himself with denying his guilt, and there was not sufficient proof against him. His adversary, Delphidius, “a passionate man,” seeing that the failure of the accusation was inevitable, could not restrain himself, and exclaimed, “Oh, illustrious Caesar! if it is sufficient to deny, what hereafter will become of the guilty?” to which Julian replied, “If it suffices to accuse, what will become of the innocent?”
Id. at 455, 15 S.Ct. 394. “What will become of the innocent?” The answer to that question in the present context is as inevitable as it is disturbing. Under the majority’s decision and the above examples, the innocent will from the start be presumed guilty. The innocent will be deprived of their right to simply deny the charges and hold the State to its burden of proving them guilty beyond a reasonable doubt. The innocent will instead be forced to assert an affirmative defense, whereupon “the possession of a controlled substance, whether actual or constructive, shall give rise to a permissive presumption that the possessor knew of the illicit nature of the substance.” § 893.101(3), Fla. Stat. (2011).
The innocent will then have no realistic choice but to shoulder the burden of proof and present evidence to overcome that presumption. See generally Stimus v. State, 995 So.2d 1149, 1151 (Fla. 5th DCA 2008) (recognizing that a defendant who raised an affirmative defense “had the burden to establish the defense and present evidence” regarding same). The innocent will thus have to bear the considerable time and expense involved in conducting discovery, calling witnesses, and otherwise crafting a case for their innocence — all while the State, with its vastly superior *434 resources, should be bearing the burden of proving their guilt.
The innocent will then hear their jury instructed on the permissive presumption that they knew of the illicit nature of the substance in question. § 893.101(3), Fla. Stat. (2011). Finally, the innocent — in I fear far too many cases — may be found guilty, convicted, and sentenced to up to life in prison. See Shelton, 802 F.Supp.2d at 1302 (“Sentences of fifteen years, thirty years, and life imprisonment [possible under section 893.13] are not by any measure ‘relatively small.’ ”).
Such convictions and sentences will be a disgrace when, on a profoundly foundational level, “the law holds that it is better that ten guilty persons escape than that one innocent suffer.” Coffin, 156 U.S. at 456, 15 S.Ct. 394 (quoting 2 William Blackstone, Commentaries *357). The majority opinion breaks that sacred law and, as discussed below, threatens bedrock principles of the presumption of innocence and burden of proof in contexts well beyond the one at hand.

Slippery Slope

As in the present case, the effect of the trial court order in Washington would be the dismissal of charges against all the defendants at issue “the overwhelming majority of whom may have known perfectly well that their acts of possession or delivery were contrary to law.” 18 Fla. L. Weekly Supp. at 1133.
Viewed in that light, these movants are unworthy, utterly unworthy, of this windfall exoneration. But as no less a constitutional scholar than Justice Felix Frankfurter observed, “It is easy to make light of insistence on scrupulous regard for the safeguards of civil liberties when invoked on behalf of the unworthy. It is too easy. History bears testimony that by such disregard are the rights of liberty extinguished, heedlessly at first, then stealthily, and brazenly in the end.”
Id. (quoting Davis v. United States, 328 U.S. 582, 597, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946) (Frankfurter, J., dissenting)). In this vein, the court in Shelton noted with some consternation that
if the Florida legislature can by edict and without constitutional restriction eliminate the element of mens rea from a drug statute with penalties of this magnitude, it is hard to imagine what other statutes it could not similarly affect. Could the legislature amend its murder statute such that the State could meet its burden of proving murder by proving that a Defendant touched another and the victim died as a result, leaving the Defendant to raise the absence of intent as a defense, overcoming a permissive presumption that murder was the Defendant’s intent? Could the state prove felony theft by proving that a Defendant was in possession of an item that belonged to another, leaving the Defendant to prove he did not take it, overcoming a permissive presumption that he did?
802 F.Supp.2d at 1308 n. 12 (citation omitted); see also Norman L. Reimer, Focus on Florida: A Report and a Case Expose a Flawed Justice System, The Champion, Sept. 2011, at 7, 8 (“The singularly extraordinary effort by the Florida Legislature to strip intent requirements from one of the most serious of felony offenses [under section 893.13] was an extreme example of the trend toward the dilution of intent requirements.”) (footnote omitted). Making similar observations, the court in Washington lamented, “Oh brave new world!” 18 Fla. L. Weekly Supp. at 1134 n. 14.

Conclusion

“Brave” indeed, in the most foreboding sense of that word. The majority opinion *435 sets alarming precedent, both in the context of section 893.18 and beyond. It makes neither legal nor common sense to me, offends all notions of due process, and threatens core principles of the presumption of innocence and burden of proof. I would find section 893.13 facially unconstitutional and affirm the trial court order under review.